No. 53948.—W. R. Zanes & Company v. United States, petition 6640–R (Galveston).

MOLLISON, Judge: This is a petition filed under the provisions of section 489 of the Tariff Act of 1930 (19 U. S. C. § 1489) for the remission of additional duties assessed by reason of undervaluation on entry of certain chairs imported from Canada.

The petitioner is a customs brokerage firm located at Dallas, Tex. According to the evidence, it received a letter dated April 12, 1945, from Rudolf van der Walde, Inc., of New York City, requesting the petitioner to take care of the payment of duty and customs clearance, as well as delivery to the consignee, of a

carload of chairs to be imported from Canada. In accepting the commission, the petitioner requested information as to the home market value of the chairs.

A reply under date of April 19, 1945, was received by the petitioner, wherein, after detailing the arrangements made as to shipment, the following appears:

In regard to the question of home market value, we do not have the exact information, but these chairs have only been sold in small quantities in Canada, while we have an arrangement with the factory for the importation of large lots. (Petitioner's exhibit 3.)

Prior to the receipt of the merchandise another letter was received by the petitioner from Rudolf van der Walde, Inc., dated May 11, 1945, containing, among other things, the following paragraph:

Our factory in Canada did not understand our question as to Home Market Value as we are taking practically most of the output of the factory and there is a very limited sale of beach chairs in Canada. However, we are still corresponding with them in the matter and hope to be able to send you a satisfactory explanation in due course. In the meantime, kindly file a submission sheet with the Appraiser, before making the Entry, to ascertain whether the Appraiser has the information as to the market value in Canada. We have been told by our New York Custom House Brokers to give you this information, for our own protection. (Petitioner's exhibit 4.)

On May 16, 1945, petitioner submitted the consular invoice to the appraiser with the request that the latter furnish the latest information as to value in his possession, and on May 18, 1945, the request was returned marked "no information."

On May 18, 1945, entry of the shipment was made at the invoice values plus Canadian sales tax by the petitioner in its own name as importer of record "For account of Rudolf van der Walde, Inc.," and we note that the "Declaration of Nominal Consignee or Agent" on the reverse of the entry was executed by the proper officer of the petitioner, naming Rudolf van der Walde, Inc., as "actual owner for Customs purposes of the said merchandise." We do not find with the entry papers transmitted to the court a declaration of owner such as is provided for in section 485 (d) of the Tariff Act of 1930, but there is nothing to show that such declaration was not filed.

Under date of May 23, 1945, Rudolf van der Walde, Inc., sent a letter to the petitioner (which was received in evidence as petitioner's exhibit 5) enclosing a photostatic copy of a letter dated April 25, 1945, from the exporter of the chairs in question, wherein it was stated, among other things, that (1) there were a few sales in Canada of chairs of better quality than those shipped to the importer, (2) the chairs shipped were of inferior quality to those sold in Canada, and (3) although there was no wholesale market in Canada for chairs of the quality here involved, the exporter "would of course be happy to sell this same type of chair for wholesale distribution in Canada, at the same price which we are charging you."

The chairs were subsequently appraised at a higher value. Appeal for reappraisement was duly filed by the petitioner, but was abandoned before coming to trial.

At the hearing on the petition the vice president of the petitioner, after identifying the several exhibits hereinbefore referred to, testified that the correspondence was turned over to the appraiser and that he had no other information that would lead him to believe that the value of the chairs was higher than that specified on the consular invoice, which formed the basis of entry.

The appraiser of merchandise at the port of Dallas, at which entry was made, corroborated the testimony of the previous witness as to the submission of the request for information and the correspondence, and stated that in his opinion there was no intent on the part of the previous witness to defraud the revenue, etc., and that in his opinion the witness' conduct had been proper in all respects.

The case was transferred to New York, at which place the testimony of Eugene Hennigson, a witness on behalf of the petitioner, was taken. Mr. Hennigson's principal business was with a firm of forwarding agents bearing his name, but it also appeared that he was vice president of the firm of Rudolf van der Walde, Inc., and although his duties were, he said, "to manage the office, taking care of all matters," he characterized his service in the office of vice president as "merely an accommodation, a courtesy."

The firm was a Canadian one, he said, principally engaged in shipping lumber to South Africa, and utilized the facilities of his firm of forwarding agents in such business. He did not personally receive any salary or compensation for his work with the Rudolf van der Walde firm, but his firm received a service charge weekly "for looking after the shipments," presumably those of the lumber. Neither he nor his firm received any payment or compensation for handling the shipment of chairs here in question, and neither he nor his firm had any personal interest in the same. He stated that he had signed the letters hereinbefore referred to and received in evidence, and he stated that he gave all the information in his possession as to value to the petitioner herein, and that he had no intention to defraud the revenue, etc.

On cross-examination the witness stated that the Montreal firm (Rudolf van der Walde, Inc.) had sent a sample chair to the New York office with the request to "find out whether there is a market for it in the States." He, personally, did not know what to do about it, and turned the matter over to a friend, who presumably secured the order for the shipment here in question, as well as other orders. Apparently one order was placed, covering 10 or 11 carloads, of which the instant shipment was one, all at the one price shown on the invoice.

On behalf of the respondent there was offered in evidence a copy of a letter dated September 1, 1944, addressed by the exporter to one Alfred Ebel of Ste. Therese, Quebec, concerning the make-up and price of chairs. Mr. Ebel's connection with the matter at hand is not revealed, but counsel for the petitioner did not base his objections upon that ground. There was also offered a copy of a letter dated September 11, 1944, addressed by Rudolf van der Walde, president of Rudolf van der Walde, Inc., to the exporter of the chairs in question, and obviously relating to certain dickering as to price, etc., which was then going on.

Both of these letters, dated some 7 months prior to the importation of the chairs in question, are too remote and too inconclusive to have any bearing upon the good faith and intentions of the petitioner, as agent, or its principal at the time the entry in question was made. Certainly, we think that petitioner's exhibit 5 and its enclosure, which were turned over to the appraiser, reflect more accurately the situation which obtained at the time of entry, i.e., as to the good faith and intention of the entrants in adopting and adhering to the invoice value as the basis of entry.

We are satisfied that the record warrants a finding that entry at less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States, to conceal or misrepresent the facts of the case, or to deceive the appraiser as to the value of the merchandise, and we so find.

Judgment will therefore issue granting the petition accordingly.